UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



LEDARIUS WRIGHT,

     Plaintiff,

v.

JACQUELYN LEVITT, M.D., et al.,

     Defendants.

13-CV-563
DECISION & ORDER

On April 3, 2013, the plaintiff, Ledarius Wright, commenced this action under 42 U.S.C. § 1983 against various officials of the New York State Department of Corrections and Community Supervision ("DOCCS"). Docket Items 1 (complaint) and 43 (amended complaint). The case was referred to United States Magistrate Judge Hugh B. Scott— on July 25, 2016, for all proceedings under 28 U.S.C. § 636(b)(1)(A), Docket Item 37, and on October 20, 2016, for all proceedings under 28 U.S.C. § 636(b)(1)(B), Docket Item 42. On October 29, 2018, the defendants moved for summary judgment, Docket Item 69; on December 14, 2018, the plaintiff responded, Docket Items 76-77; and on January 18, 2019, the defendants replied, Docket Item 83. After hearing oral argument, Judge Scott issued a Report and Recommendation ("R&R") on June 27, 2019, finding that the defendants' motion should be denied. Docket Item 92.

On July 11, 2019, the defendants objected to the R&R, arguing only that Judge Scott erred in finding material issues of fact as to whether Wright is excused from his failure to exhaust administrative remedies before filing suit. Docket Item 93. They did not object to his finding that the substance of Wright's claim is sufficient to survive

summary judgment. *See id.* On August 1, 2019, the plaintiff responded to the objection, Docket Item 95, and on August 16, 2019, the defendants replied, Docket Item 96.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objection and response, and the materials submitted by the parties. Based on that *de novo* review, the Court accepts and adopts Judge Scott's recommendation to deny the defendants' motion.

## DISCUSSION

The Court assumes the reader's familiarity with the facts alleged in the amended complaint, *see* Docket Item 43, and Judge Scott's analysis in the R&R, *see* Docket Item 92.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in original). "Accordingly, an inmate is

required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)); *see also Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016) (explaining that the relevant inquiry is "whether administrative remedies were actually available to the aggrieved inmate").

In *Ross*, the Supreme Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief"[1]: (1) "when (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"—that is, when "no ordinary prisoner can discern or navigate [the procedure]"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Because "failure to exhaust is an affirmative defense under the PLRA," *Jones v. Bock*, 549 U.S. 199, 216 (2007), "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute," *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alterations omitted) (citations omitted). "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains

---

[1] *See also Williams*, 829 F.3d at 123 n.2 ("[T]he three circumstances discussed in *Ross* do not appear to be exhaustive.").

factual elements." *Id.* (citation omitted). "If the defendants meet this initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Id.* (citing *Hemphill v. New York*, 380 F.3d 680, 687-88 (2d Cir. 2004)). In other words, while the initial inquiry of nominal availability is a question of law, the subsequent inquiry of actual availability is one of fact.[2]

The dispute here is not whether DOCCS's standard grievance procedure nominally provides a pathway by which an inmate may grieve an issue. On that issue, the parties agree that such a procedure is nominally available. Rather, the dispute is whether a rational jury nevertheless could find that this procedure actually was unavailable to Wright. Wright argues that such a finding is possible under what is best characterized as an amalgam of the second and third *Ross* circumstances—that is, that "no ordinary prisoner [could] discern or navigate [the administrative procedure]" for grieving the denial of certain medical care and that the defendants' actions "thwart[ed] [Wright] from taking advantage of a[ny existing] grievance process through machination, misrepresentation, or intimidation." *See Ross*, 136 S. Ct. at 1859-60.

---

[2] *See also, e.g., Medina v. Napoli*, 725 F. App'x 51, 54 (2d Cir. 2018) (denying the defendants' motion for summary judgment where "[t]he record establishe[d] that [the plaintiff's] allegations . . . [were] sufficient, when viewed in the light most favorable to [the plaintiff], to raise a genuine issue of material fact as to whether the grievance process was 'available' to [the plaintiff] under the *Ross* and *Williams* exhaustion analysis"); *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 556 (W.D.N.Y. 2018) (granting summary judgment to the defendants because they "established *prima facie* entitlement to judgment as a matter of law on the issue of administrative exhaustion, and [the p]laintiff ha[d] failed to raise a genuine issue of material fact" as to whether administrative remedies were available to him), *appeal filed sub nom. Scott v. Cole*, No. 18-1049 (2d Cir. Apr. 10, 2018).

More specifically, Wright argues that the prison medical review process supplants the standard grievance procedure—if not completely, then at least while the medical review is ongoing—and that the defendants' willful failure to complete the former prevented him from using the latter. That argument is analogous to that considered and found potentially meritorious in *Ross*. There, the Supreme Court remanded the case for consideration of whether administrative procedures were available to an inmate who not only "thought" that an internal employee misconduct investigation "served as a substitute for [the] otherwise standard [inmate grievance] process" but also produced "many administrative dispositions . . . indicating that . . . wardens routinely dismiss [standard] grievances as procedurally improper when parallel [employee] investigations are pending." *Id.* at 1855, 1860-61.

As *Ross* makes clear, Wright's argument is meaningfully distinct from an unavailability claim premised on subjective and unspecified ignorance or fear. Instead, Wright's claim is that an ordinary prisoner, presented with the fact of an ongoing medical appeal, would conclude that this other, parallel process replaces the standard grievance procedure. And, as Judge Scott found, Wright has submitted sufficient evidence from which a jury might reach that conclusion. *See* Docket Item 92 at 16-17.

Indeed, a rational jury might well conclude, on the evidence in the record, that an ordinary prisoner would not believe that he could grieve an allegedly ongoing medical appeal.[3] That is particularly so here, where the appeal at issue required input from

---

[3] The defendants admit that defendant Levitt advised Wright twice in January 2011 that she was awaiting a decision on whether Wright would receive an otorhinolaryngology consult. *See* Docket Item 70 at 11. They claim that this loop was closed, however, when Levitt sent Wright a letter on February 2, 2011, advising Wright that "[a]fter a review of your records, it has been determined that the reasonable

external actors such as the prison's health maintenance organization and the DOCCS Regional Medical Director. *See* Docket Item 70 at 7 (defendants explaining that the health maintenance organization uses "proprietary" criteria to "evaluate[ ] requests for consults and specialty care" and that "[a] DOCCS Regional Medical Director . . . can overturn a denial [only] if after review he or she determines that [the care at issue] is a medical necessity"). In other words, there is a real possibility that an inmate might understand the medical review procedure to be the only one available. That possibility is all that is required to survive summary judgment. *See generally Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

And while Wright has not produced the sort of quasi-judicial materials offered by the *Ross* plaintiff, that deficiency is not conclusively fatal to Wright's claim. The relevant question is whether an "ordinary prisoner [could] discern" how to appeal the denial of medical care. *See Ross*, 136 S. Ct. at 1859. Wright's evidence that even the prison officials in charge of that process are not sure as to the appropriate procedure, *see* Docket Item 92 at 16-17, is sufficient to create an issue of fact as to whether the "administrative scheme [is] so opaque that . . . no ordinary prisoner [could] make sense of what it demands," *see Ross*, 136 S. Ct. at 1859.

---

accommodations that have been provided to you allow to you to communicate adequately, obviating the need to pursue a cochlear implant at this time." Docket item 71-5 at 1. Wright denies that he ever received this letter and further claims that he continued to wait for a final determination long after February 2011. *See* Docket Item 77 at 4. Therefore, even assuming that a final determination was rendered, there still is a material issue of fact as to whether that information was conveyed to Wright and—by extension—whether a reasonable prisoner in Wright's position would have believed that he could grieve the underlying denial of medical care.

## CONCLUSION

For the reasons stated above and in the R&R, the defendants' motion for summary judgment, Docket Item 69, is DENIED. Because it appears that all discovery is complete in this action, *see* Docket Item 66, the parties shall contact the Court by February 29, 2020, to schedule a status conference and set a trial date.


SO ORDERED.


Dated:      February 25, 2020
            Buffalo, New York


LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE