UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEDARRIUS WRIGHT,

                                       Plaintiff,

                                                                                                      Case # 13-CV-563-FPG

v.

                                                                                                        DECISION AND ORDER

JACQUELYN LEVITT, M.D., et al.,

                                       Defendants.

## INTRODUCTION

On December 7, 2021, and December 8, 2021, the Court conducted an evidentiary hearing in this prisoner civil rights action brought pursuant to 42 U.S.C. § 1983 by Plaintiff Ledarrius Wright against Defendants Carl Koenigsmann, Jacquelyn Levitt, and Christina Misa. The hearing concerned Defendants' affirmative defense that Plaintiff failed to exhaust his available administrative remedies, as required by the Prison Litigation Reform Act of 1995 ("PLRA").

At the hearing, documentary evidence was admitted, and testimony was taken of witnesses called by Plaintiff and Defendants. At the conclusion of the hearing, the undersigned reserved decision and indicated that a written decision would follow. For the reasons stated below, Plaintiff is excused from exhausting his administrative remedies and this case will proceed to trial as scheduled on February 14, 2022.

## PROCEDURAL HISTORY

The Court assumes the parties' familiarity with the underlying facts and the full record of prior proceedings in this matter. On January 18, 2019, Defendants moved for summary judgment arguing, *inter alia*, that Plaintiff had failed to sustain his burden of proving that the grievance

procedure was unavailable to him. ECF No. 83 at 2. On June 27, 2019, Magistrate Judge Hugh B. Scott issued a Report and Recommendation ("R&R") recommending denial of Defendants' summary judgment motion, ECF No. 92, and, on February 25, 2020, District Judge Lawrence J. Vilardo issued an order adopting Judge Scott's R&R on *de novo* review. ECF No. 97. In that order, Judge Vilardo found that Plaintiff's evidence—that even the prison officials in charge of the process for appealing a denial of medical care were "not sure as to the appropriate procedure"—was sufficient "to create an issue of fact as to whether the 'administrative scheme [is] so opaque that . . . no ordinary prisoner [could] make sense of what it demands.'" ECF No. 97 at 6 (citing *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016)).

On January 7, 2021, Defendants moved *in limine* for a pretrial evidentiary hearing, arguing that the Court, rather than a jury, should resolve the factual issue identified by Judge Vilardo—*i.e.*, whether Defendants' administrative scheme is indeed obscure to such a degree that an ordinary inmate could not avail himself of it. *See* ECF No. 124-1 at 7-9; ECF No. 97 at 6. "[T]he Second Circuit has held that disputed facts do not convert exhaustion into a jury issue." *Sims v. Ellis*, No. 15-CV-6355, 2019 WL 4918048, at *6 (W.D.N.Y. Oct. 4, 2019). "Instead, the appropriate remedy [is] to hold a hearing on the issue of exhaustion." *Id.*; *see also Shepherd v. Fisher*, No. 08-CV-9297, 2017 WL 666213, at *24 (S.D.N.Y. Feb. 16, 2017) ("There continue to be factual disputes that prevent the Court from deciding whether [plaintiff] exhausted his claims and/or whether the administrative remed[ies], although officially on the books, were actually available to plaintiff. Whether these claims were properly exhausted is a disputed issue of fact reserved for the Court and not the jury." (internal quotation marks & citation omitted)). Accordingly, the Court granted Defendants' motion and held a pretrial evidentiary hearing on administrative exhaustion. ECF No. 146; ECF No. 161; ECF No. 162.

**LEGAL STANDARD**

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In general, where a prisoner fails to properly follow an established grievance procedure prior to bringing suit, "he has failed to exhaust his administrative remedies, and his claims are subject to dismissal." *Wallace v. Fisher*, No. 13-CV-1208, 2015 WL 9275001, at *3 (N.D.N.Y. Dec. 18, 2015) (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "However, a plaintiff's failure to exhaust does not end the inquiry." *Id.*

The Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016). They are: (1) "when (despite what regulations or guidance materials may promise) [the administrative procedure] operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"—that is, when "no ordinary prisoner can discern or navigate [the procedure]"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidations." *Id.*

Though "defendants bear the initial burden of establishing, by pointing to legally sufficient sources such as statute, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute," *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (alterations and citations omitted), it is plaintiff's burden to show that "other factors . . . . rendered a nominally available procedure unavailable as a matter of fact." *Id.* Thus, "while the

initial inquiry of nominal availability is a question of law, the subsequent inquiry of actual availability is one of fact." *Wright v. Levitt*, No. 13-CV-563, 2020 WL 897258, at *2 (W.D.N.Y. Feb. 25, 2020).

As stated above, "the Second Circuit has held that disputed facts do not convert exhaustion into a jury issue." *Sims*, 2019 WL 4918048, at *6. Indeed, where factual disputes "prevent the Court from deciding whether [a plaintiff] exhausted his claims and/or whether the administrative remed[ies], although officially on the books, were actually available to [the plaintiff]," those factual questions are "reserved for the Court and not the jury." *Shepherd*, 2017 WL 666213, at *24.

## DISCUSSION

### I. Factual Findings

After carefully considering the evidence submitted at the hearing, the Court finds that an ordinary prisoner in Plaintiff's position, in the face of an ongoing medical review process, would not be able to discern how to appeal the denial of medical care—either because he would have understood the medical review process to have supplanted the standard grievance process, or he would have reasonably understood the review process to be ongoing, or both.

The following represents the Court's findings of fact. Plaintiff is deaf and was transferred to Wende Correctional Facility because that facility is equipped to help inmates who are hearing-impaired. Tr. 26 at 14-16.[1] On April 30, 2010, Plaintiff was recommended by an audiologist to have a consult with an ENT specialist to be evaluated for cochlear implants. Tr. 102-03 at 10-20. APS Healthcare ("APS") denied this consultation request. Tr. 27 at 6-10. APS is not part of the Department of Corrections and Community Supervision ("DOCCS") and is "an outside entity"

---

[1] "Tr." refers to the record from the pretrial administrative exhaustion hearing in this matter. ECF No. 161; ECF No. 162.

that essentially acts as a health management organization ("HMO"), making determinations regarding the medical necessity of treatment for DOCCS' inmates. Tr. 83-84 at 1-9. Consult requests for outside consultations were entered into the computer and then reviewed by APS using evidence-based medicine in order to make medical decisions. Tr. 83 at 4-9.

DOCCS' Regional Medical Director ("RMD"), Dr. Christina Misa ("Misa"), subsequently approved APS's denial of the April 2010 ENT consult request. Tr. 103 at 8-20. RMD review occurs automatically after a denial by APS. Tr. 83 at 10-14. Misa's reasoning was that traditional hearing aids had not been attempted at that time. Tr. 103 at 8-12. After Misa's denial, Plaintiff tried hearing aids, which proved ineffective. Tr. 27 at 11-14. Thereafter, on November 9, 2010, Plaintiff was once again recommended to have a consult with an ENT specialist to be evaluated for cochlear implants. Tr. 27-28 at 17-1; ECF No. 166 at 7. Wende medical submitted a request for an ENT consult for evaluation for cochlear implant surgery on November 23, 2010. Plaintiff's Exhibit 30; ECF No. 166 at 7.

On November 23, 2010, APS denied the second request to have Plaintiff consult with an ENT specialist regarding cochlear implants. Tr. 84-85 at 21-10. APS's denial again made its way to Misa's desk. She reviewed the denial on December 8, 2010, and requested that a report on Plaintiff's history of deafness, current functional status, and accommodations be sent to her and Chief Medical Officer ("CMO") Dr. Carl Koenigsmann ("Koengismann"). Tr. 86 at 10-21; Plaintiff's Exhibit 30. At that time, Misa decided it was appropriate to "send [ ] up" APS's denial to Koenigsmann because she "had never had to review a cochlear implant" request. Tr. 86-87 at 19-7. According to Misa, the review of the APS denial was "out of [her] hands" once she elevated it to Koenigsmann. Tr. 88 at 7. It is unclear what occurred once Misa "elevated" the issue to Koengismann. Koenigsmann has no recollection of Plaintiff's request, but he testified at a

deposition that the decisions of a DOCCS' review agency (including APS) are reviewed by the RMD. "If the regional medical director agrees with the denial, then the consultation is denied *and it goes no further*. If the regional medical director disagrees with the denial, then they would approve it." ECF No. 125-3 at 36-37 (emphasis added); Plaintiff's Exhibit 61. Koenigsmann further testified that once APS had denied Plaintiff's ENT consult request, "it is all up to [Misa] at that point" to decide whether to agree or disagree with the denial. *Id.* at 39. From his standpoint, it was "outside of normal practices" to have patient information sent to both the RMD and CMO. *See* ECF No. 165 at 3 (citing Plaintiff's Exhibit 61 at 40).

If Dr. Koenigsmann's testimony is to be believed, he would have taken no action on Plaintiff's second request; review would have and should have ended with Misa. On the other hand, there is some evidence that, contrary to Koenigmann's testimony and consistent with Misa's testimony, Koenigsmann did review Plaintiff's second request.

A January 21, 2011 memo sent by Deputy Superintendent Susan Post ("Post") to Koenigsmann. reads as follows:

> Attached is a report from Wende Correctional Facility Manual Communicator C. Zaluski which provides an overview of inmate Wright's current ability to communicate. It appears that at this time the reasonable accommodations provided for Mr. Wright are adequate. Records indicate that Wright will not be Parole eligible until September 12, 2045. Therefore, we will have ample opportunity to continue to monitor Mr. Wright's ability to communicate.

ECF No. 71-3.[2] Misa testified that this letter indicates that Koenigsmann made a determination regarding Plaintiff's second request. Tr. 87 at 8-24.

According to the testimony of Dr. Jacquelyn Levitt ("Levitt"), Lead Facility Health Medical Officer at Wende, Post informed Levitt of the decision that Plaintiff's second request was

---

[2] This document was not admitted into evidence at the exhaustion hearing. However, it was part of the record before the Court on Defendants' motion for summary judgment. The Court takes judicial notice of it, as requested by Defendants. *See* ECF No. 166 at 9.

denied. She further testified that Post "apparently had received the response from Chief Medical Officer, Dr. Koenigsmann." Tr. 131 at 19-20; 154-155 at 21-1. However, when asked how Post received a final determination from Koenigsmann, she testified that she was unaware of whether any communication from Koenigsmann to Post occurred in writing or on the phone and that it would not have been "common" for such a communication to occur orally. Tr. 155 at 2-8. There is no evidence in the record of a written communication from Koenigsmann to Post. Levitt further testified that once she learned from Post that the request had been denied, she communicated that decision to Plaintiff in writing and verbally in her office. Tr. 155 at 9-11.

The written communication by Levitt to Plaintiff was a February 2, 2011 letter. In pertinent part, the letter reads: "After a review of your records, it has been determined that the reasonable accommodations that have been provided to you allow you to communicate adequately, obviating the need to pursue a cochlear implants at this time." ECF No. 71-5 at 1; Defendants' Exhibit 413.

Plaintiff testified, and the Court credits, that he does not recall when he became aware of the letter and did not understand the letter to mean that his second request for an ENT consult was a closed issue. Tr. 52 at 4-7, 19-24. Indeed, Levitt herself testified that the letter was misleading. Tr. 158 at 6-10. Because he believed medical review was ongoing, Plaintiff didn't file a grievance, and in April 2013, Plaintiff filed the present action challenging the denial of his consult request. Tr. 28-29 at 21-23; ECF No. 1

The hearing unveiled important facts regarding whether Plaintiff was ever directed by Defendants, or other prison officials, to the standard grievance process, despite the ongoing medical review process. Post testified that although she sometimes referred inmates who made medical requests to the "grievance people" to file a grievance, she did not recall doing so in Plaintiff's case. Tr. 218 at 14-23; Tr. 221 at 19-25. Additionally, on at least one occasion, Plaintiff

was specifically directed by a prison official to make requests related to medical care to medical personnel. He was not directed to the standard grievance procedure. This occurred when K. Crowley, Deputy Superintendent for Programs, informed Plaintiff in a January 12, 2011 memo that he "need[ed] to deal with Medical Staff on the issue of [him] getting implants as they have to get the approval for this type of thing. I am sorry but there is nothing more I can do to assist you in this matter." Defendants' Exhibit 415.

## II.     Analysis

Defendants argue that Plaintiff did not exhaust his administrative remedies because he could have filed a grievance at any time using DOCCs' standard three-step grievance system—regardless of the status of the review of Plaintiff's ENT consult request by DOCCS' medical personnel. ECF No. 166 at 13, 16. Though it is undisputed that no one within the standard grievance process had the authority to overrule a medical determination by the CMO, ECF No. 165 at 4 (citing Tr. 97-98 at 22-12), Defendants assert that the grievance process is not a dead letter as it may provide some relief. Specially, they point out that medical personnel may "reconsider the decision" or explain their decision more clearly to an inmate-complainant in response to a standard grievance. ECF No. 166 at 22-23.

Plaintiff counters that the standard grievance program could not have been used because the medical denial at issue was not grievable under DOCCS' Directive 4040, Section 701(3)(1).[3] ECF No. 165 at 6-10. In the alternative, he contends that the grievance system was not available to him because , *inter alia*, it was so opaque that it was incapable of use as a practical matter and because he was misled by prison officials' communications, which he asserts undermined his use

---

[3] That Section provides that "[a]n individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered non-grievable." Defendants' Exhibit 408.

of the grievance process. *Id.* at 12-16.  Because the Court finds that administrative remedies were not actually available on Plaintiff's latter point, it will simply assume that the grievance system was theoretically an appropriate mechanism to make medical review complaints.

Though Defendants would have this Court interpret Plaintiff's prior use of the grievance procedure—and failure to use it in this instance—as evidence that Plaintiff was in a position to grieve the denial of an ENT consult, Plaintiff's decision is consistent with his documented belief that he was still waiting for a decision about whether he would get cochlear implants through the review of DOCCS medical personnel, separate and apart from the standard grievance process. *See* Tr. 28 at 21-23; Tr. 32 at 4-15.  More importantly, it underscores the possibility that Plaintiff understood the medical review procedure to be the only review process available in this situation or to have supplanted the standard procedure.

Furthermore, reliance on Dr. Levitt's February 2, 2011 letter to Plaintiff to assert that Plaintiff should have known he could grieve the denial of an ENT consult for cochlear implants is misplaced.  Levitt's letter reads as follows: "After a review of your records, it has been determined that the reasonable accommodations that have been provided to you allow you to communicate adequately, obviating the need to pursue a cochlear implants at this time." ECF No. 71-5 at 1; Defendants' Exhibit 413.  It is unclear from Plaintiff's testimony when he became aware of the letter, and Plaintiff testified that he does not know the meaning of the word "obviating" and did not understand this letter to close the issue. Tr. 52 at 4-7, 19-24.

If Plaintiff's misunderstanding of the appropriate grievance procedure was the only basis for his assertion that administrative remedies were unavailable, he would not be excused from exhausting his remedies. *See Richardson v. Jakubowski*, No. 16-CV-6038, 2019 WL 4674199, at *3 (W.D.N.Y. Sept. 25, 2019). (finding failure to exhaust unexcused where plaintiff asserted that

he misunderstood the grievance procedures but failed to allege any false or misleading statements by prison officials). "Absent misleading statements by prison officials, an inmate's misunderstanding of a procedure does [not] mean the procedure has been misrepresented and is therefore unavailable." *Id.*

Here, Plaintiff has adduced evidence that DOCCS officials were confused about the proper medical care review process and how to properly communicate the denial of the ENT consult request to Plaintiff. More importantly, there is testimony from prison officials that they found their own communications misleading—communications which purportedly closed the loop on the denial of the ENT consult request.

Specifically, Levitt testified that her letter to Plaintiff "maybe . . . was a little misleading to him." Tr. 158 at 6-10. Post testified that while she sometimes referred inmates to the grievance process when it applied, she had no recollection of doing so here. Tr. 218 at 14-23; Tr. 221 at 19-25. On another occasion, Plaintiff was specifically directed to "Medical Staff"—not to the inmate grievance procedure—by Deputy Superintendent for Programs K. Crowley. Defendants' Exhibit 415. These facts set this case apart from cases where an inmate cries foul regarding the role prison officials played in making a grievance process unavailable, but offers nothing to "back it up." *See Belilie v. Griffin*, No. 9:11-CV-0092, 2013 WL 1776086, at *8 (N.D.N.Y. Feb. 12, 2013) (finding plaintiff's "mere threadbare allegations that his grievances were intercepted and discarded, without evidence to support such allegation . . . insufficient to excuse his failure to comply with the IGP."); *Veloz v. New York*, 339 F.Supp.2d 505, 514 (S.D.N.Y. 2004) ("Even assuming [the plaintiff] did submit grievances, he offers no evidence that any particular officer thwarted his attempts to file[.]").

Based on the analysis above, and upon careful consideration of all of the evidence submitted at the hearing, the Court finds that an ordinary prisoner in Plaintiff's position could not have discerned how to appeal the denial of medical care in this case. The one-two punch of the discrepancies among prison officials regarding the appropriate procedure along with Plaintiff's belief that a medical review was (and still is) ongoing, rendered the standard grievance procedure unavailable. *See Ross*, 136 S. Ct. at 1855, 1860-61 (remanding case for consideration of whether administrative procedures were available to an inmate who (1) believed that an internal employee misconduct investigation supplanted the standard inmate grievance process and (2) produced evidence that prison officials dismissed standard grievances as procedurally improper when employee investigations were pending).

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has met his burden to show that other factors rendered Defendants' nominally available administrative grievance procedure unavailable to him as a matter of fact. Accordingly, this case will proceed to trial as scheduled on February 14, 2022.

IT IS SO ORDERED.

Dated: January 24, 2022
 Rochester, New York

_____
HON. FRANK P. GERACI, JR.
District Judge
United States District Court