UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LEDARRIUS WRIGHT,

                              Plaintiff,

                                                        Case # 13-CV-563-FPG

v.

                                                        DECISION AND ORDER

JACQUELYN LEVITT, M.D., et al.,

                              Defendants.

## INTRODUCTION

On May 13, 2021, the Court denied without prejudice several motions *in limine* brought by Defendants Carl Koenigsmann, Jacquelyn Levitt, and Christina Misa.   The Court indicated that Defendants could renew and refile those motions once the Court had held a hearing on administrative exhaustion and ruled on that threshold issue.   ECF No. 146 at 4.   On December 7, 2021, and December 8, 2021, the Court conducted an evidentiary hearing on exhaustion, ECF Nos. 161, 162, and subsequently issued a written decision finding that Plaintiff had met his burden to show that Defendants' nominally available administrative grievance procedure was unavailable to Plaintiff as a matter of fact.   ECF No. 169 at 11.

On January 19, 2022, Defendants renewed their motions *in limine*.   They request an order granting the following relief: (1) limiting Plaintiff to recovering nominal and punitive damages only and precluding him from recovering compensatory damages; (2) permitting Defendants to rely on Plaintiff's prior criminal trial testimony, in the event the Court does not preclude compensatory damages; (3) precluding the expert testimony of Dr. Roger Miles Rose; (4) precluding the expert testimony of Dr. Paul Adler; and (5) precluding Plaintiff from maintaining

claims against Defendants Koenigsmann and Misa.  *See generally* ECF No. 167.  On January 28, 2022, Plaintiff responded in opposition, ECF No. 173, and on February 2, 2022, Defendants replied, ECF No. 174.

For the following reasons, and as discussed below, Defendants' motion is GRANTED IN PART, DENIED IN PART WITH PREJUDICE, and DENIED IN PART WITHOUT PREJUDICE.

## DISCUSSION

### I.    Section 1997e(e) Damages

Plaintiff's sole claim is that Defendants violated his rights under the Eighth Amendment of the United States Constitution and 42 U.S.C. § 1983 by denying him necessary medical care and that such denial "amounted to cruel and inhuman treatment and demonstrated deliberate indifference to his needs and his suffering."  ECF No. 43 at 6.  Plaintiff is deaf, and the crux of his claim is that Defendants violated his Eighth Amendment rights in denying him a cochlear implant consultation with an Ear Nose and Throat ("ENT") specialist.  Plaintiff seeks $5,000,000 in compensatory damages, which includes recovery for "physical pain and suffering, emotional pain & suffering and inconvenience."  *Id.*  Plaintiff also seeks punitive damages in the amount of $1,000,000.  *Id.*

Defendants assert that Plaintiff should be limited to recovering nominal and punitive damages because Plaintiff cannot show he suffered a "physical injury" caused by Defendants—which they contend is a prerequisite to recovery under the Prison Litigation Reform Act ("PLRA").  ECF No. 167-1 at 3-6.

In response, Plaintiff contends that he suffered sufficient physical injury to permit compensatory damages for mental and emotional suffering.  ECF No. 173 at 1-4.  Plaintiff points

to the fact that as a deaf person he was an easy target for the multiple beatings he suffered at the hands of prison staff and fellow inmates.  ECF No. 173 at 2.  Plaintiff's position is that these beatings, which were physical in nature, foreseeably resulted from Defendants' "decision to leave [Plaintiff] deaf."  *Id.*  As an alternate theory, Plaintiff argues he is entitled to seek compensatory damages because "[b]eing left deaf for years is an inherently physical injury."  ECF No. 173 at 2.

Defendants disagree and contend that Plaintiff's deafness does not qualify as a "physical injury" under the statute because it was not caused by Defendants in the first place.  ECF No. 167-1 at 4.  Rather, Defendants point out, his claim stems from Defendants' denial of an ENT consult. Furthermore, they argue that the alleged beatings may not properly be considered a "physical injury" because they were carried out by others, not Defendants.  *Id.* at 5.

The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."  42 U.S.C. § 1997e(e).  Thus, the statute "bars recovery of compensatory damages for mental and emotional injuries, absent physical injury, in § 1983 actions."  *Brown v. Napoli*, 687 F. Supp. 2d 295, 299 (W.D.N.Y. 2009) (citing *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002)).  Section 1997e(e) does not define "physical injury", but case law has developed which specifies the term's metes and bounds.  "[C]ourts have held that in order to constitute a physical injury under 1997e(e), an injury must be more than *de minimis*, but need not be significant."  *May v. Donneli*, No. 9:06–cv–437, 2009 WL 3049613, at *3 (N.D.N.Y. Sept. 18, 2009).

"It is well settled that in order to 'recover compensatory damages under Section 1983, a plaintiff must prove that his injuries were *proximately caused* by the constitutional violation.'" *Carlton v. C.O. Pearson*, 384 F. Supp. 3d 382, 387 (W.D.N.Y. 2019) (emphasis in original)

(quoting *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994)).  Thus, "[u]nless a plaintiff proves that he or she has suffered an injury that *resulted from* a constitutional violation, the plaintiff is entitled only to nominal damages."  *Id.* at 388 (emphasis in original).

### A.  Whether Plaintiff's Deafness Alone Constitutes a "Physical Injury"

The Court considers first Plaintiff's argument that his deafness, in and of itself, is a "physical injury" that would satisfy § 1997e(e).[1]  Plaintiff does not argue that Defendants caused his deafness; his theory is that their inaction caused him to remain deaf which is "an inherently physical injury."  ECF No. 173 at 2.

The Court finds that Plaintiff's argument fails under the reasoning of *Leon v. Johnson*, 96 F. Supp. 2d 244  (W.D.N.Y. 2000).  In *Leon*, the defendants argued that there was no evidence that the plaintiff suffered a physical injury due to a delay in receipt of prescribed medication.  *Leon*, 96 F. Supp. 2d at 248.  In response, plaintiff contended "that the denial of his prescribed medication alone satisfies the physical injury requirement of § 1997e(e)."  *Id.*  The court considered whether the defendants' failure to administer the prescribed medication to plaintiff, standing alone, was a sufficient "physical injury" under the statute and reasoned as follows:

---

[1] Neither party has raised the threshold question of whether Defendants waived their right to bring an argument under § 1997e(e).  Courts in this Circuit are split on whether § 1997e(e) is an affirmative defense that must be raised in the defendant's answer to be maintained, or a "limitation on recovery" that need not be pled.  *Compare In re Nassau Cnty. Stip Search Cases*, No. 99–CV–2844 (DRH), 2010 WL 3781563, at *2 (E.D.N.Y. Sept. 22, 2010) *with Kelsey v. Cnty. of Schoharie*, No. 04-CV-299, 2005 WL 1972557, at *1 (N.D.N.Y. Aug. 5, 2005).  The majority of courts that have addressed the issue appear to fall on the affirmative defense side of the question.  *See Walker v. Schult*, 463 F. Supp. 3d 323, n.7 (N.D.N.Y. 2020) (collecting cases), *appeal filed.*

Assuming § 1997(e)'s "physical injury" requirement is an affirmative defense, the Court sees no obligation to rule on the issue of waiver because Plaintiff has not raised it.  Even if Plaintiff had argued waiver, the Court would find no waiver here.  Though it is true that Defendants did not raise § 1997e(e) in their Answer to Plaintiff's Amended Complaint, *see* ECF No. 53, and did not raise this argument until January 7, 2021 in their motion *in limine*, ECF No. 125-1, Plaintiff has never argued waiver.  Furthermore, Plaintiff was provided with "notice and opportunity to respond," and did indeed respond to Defendants' § 1997e(e) argument.  On these facts, the Court may consider Defendants' argument at this juncture, notwithstanding a ruling on the issue of waiver.  *See Gilmore v. Gilmore*, 503 F. App'x 97, 99 (2d Cir. 2012) (summary order) (finding district court did not abuse its discretion in allowing defendants to assert an affirmative defense raised for the first time in a joint pretrial order where plaintiffs were provided notice and an opportunity to be heard).

4

> [A]bsent some concrete physical harm, a delay in providing medication is not an "injury" of the type contemplated by the statute. First, there are the words themselves: "physical injury." Congress's use of these words suggests that there must be some actual harm to the plaintiff, and that the harm must be bodily in nature. The "harm" alleged here, however—a delay in receipt of medication to treat plaintiff's disease—is at most merely a potential harm, possibly putting plaintiff at risk of a worsened condition. Plaintiff does not allege that his condition did become worse as a result of not taking his medication, however, and there is no evidence that he suffered any adverse effects from the delay

*Leon*, 96 F. Supp. at 248.

The Court finds this reasoning to be sound, and on the facts of this case, it mandates a finding that Plaintiff "being left deaf" is not a sufficient physical injury for purposes of § 1997e(e).[2] Plaintiff does not argue that his ability to hear diminished because Defendants' denial of the ENT consultation for cochlear implants, or that earlier intervention with cochlear implants would have prevented some hearing-related harm. Accordingly, the Court finds that Plaintiff cannot rely on his deafness, standing alone, to satisfy the "physical injury" requirement.

### B.  Whether Beatings and Isolation Constitute a Physical Injury

Plaintiffs argue that he "was abused and beaten multiple times, by both prison staff and other inmates." ECF No. 173 at 2. Plaintiff argues that these beatings were a "foreseeable consequence" of the Defendants' inaction which left him deaf and vulnerable. *Id.* at 2-3. In addition to beatings, Plaintiff, quoting his Amended Complaint, notes that he suffered "isolation, solitary confinement and other harsh consequences of his inability to hear other inmates and prison staff, which caused the plaintiff both *physical* and emotional harm." ECF No. 173 at 2 (citing ECF No. 43 ¶ 21) (emphasis in original).

In response, Defendants argue that isolation and solitary confinement do not qualify as a "physical injury" under § 1997e(e); that any beatings Plaintiff suffered were not proximately

---

[2] The Court need not, and does not, reach the broader question of whether failure to treat a harm can never be sufficient for § 1997e(e) absent worsening of the condition.

caused by the Defendants because Defendants did not render him deaf in the first place; and that Plaintiff's have not alleged sufficient information about the beatings to permit the Court to conclude that any injury was more than *de minimis*.  ECF No. 167-1 at 2-6; ECF No. 174 at 3.  The Court considers each of these arguments in turn.

### 1.  Isolation and Solitary Confinement

Plaintiff's alleged "isolation, solitary confinement, and other harsh consequences" do not qualify as a "physical injury" under § 1997e(e).  *See Amaker v. Goord*, No. 06–CV–490A, 2015 WL 3603970, at *1 (W.D.N.Y. 2015) (finding that "disciplinary confinement to special housing for approximately 200 days and repeated denial of access to religious services and celebrations" did not meet the statute's physical injury requirement); *see also Kimbrough v. Fischer*, No. 9:13-CV-100, 2017 WL 1333549, at *4 (N.D.N.Y. Apr. 11, 2017) (finding that "deprivations . . . such as loss of recreation, inability to attend religious services, loss of contact visitations, and loss of certain privileges" did not qualify as injuries that would permit plaintiff to seek compensatory damages).  Thus, Defendants' motion is GRANTED insofar as it challenges Plaintiff's reliance on these injuries to meet § 1997e(e)'s requirements.

### 2.  Beatings

As stated above, to qualify as "a physical injury under 1997e(e), an injury must be more than *de minimis*, but need not be significant."  *May*, 2009 WL 3049613, at *3.  Plaintiff bears the burden to meet this requirement.  *Id.*

Here, Plaintiff's Amended Complaint alleges "physical injury" in the form of beatings.  *Cf. Orraca v. McCreery*, No. 9:04-CV-1183, 2006 WL 1133254, at *7 (N.D.N.Y. Apr. 25, 2006) ("A thorough search of plaintiff's complaint fails to reveal any indication that he has suffered physical injury as a result of the retaliatory acts of which he complains.").  Specifically, Plaintiff states that

he "has suffered beatings . . . and other harsh consequences of his inability to hear other inmates and prison staff, which has caused the [P]laintiff both physical and emotional harm."  ECF No. 43 ¶ 21; *cf. Leon*, 96 F. Supp. at 249 (finding "that the bare allegation of pain and suffering in the complaint (which does not say whether the pain and suffering were physical or emotional) is insufficient to defeat defendants' motion.").

Defendants argue that even if Plaintiff has alleged physical beatings in his Amended Complaint, the allegations are insufficient as a matter of law to meet the "physical injury" requirement because the extent of Plaintiff's physically injuries is unclear.   Specifically, Defendants state:

> while "beatings . . . and other harsh consequences" of being deaf in prison might arguably result in a more than *de minimus* physical injury, here, we do not know because Plaintiff has not alleged a specific physical injury.  There is not even the most rudimentary of allegations regarding a specific physical injury (i.e., when did it happen, where did it happen, how did it happen, what body part was injured?).  How is the Court to determine if Plaintiff has alleged a more than *de minimus* physical injury?

ECF No. 174 at 3.

The answer to Defendants' question is that such a factual determination by the Court regarding the extent of Plaintiff's injuries is not possible because the issue is not properly before the Court at this time.  Defendants did not raise the issue at summary judgment.  On the record before it, the Court "[cannot] determine as a matter of law that [Plaintiff's] injuries were *de minimis*."  *See McGarry v. Pallito*, No. 1:09–CV–128, 2013 WL 3338682, at *7 (D. Vt. July 2, 2013); *see also Peterson v. Morin*, No. C–11–176, 2012 WL 1694775, at *3 (S.D. Tex. May 15, 2012).

Accordingly, Defendants' motion to limit Plaintiff's damages under § 1997e(e) is DENIED WITHOUT PREJUDICE and is subject to renewal at trial.  *See United States v. Chan*, 184 F. Supp.

2d 337, 340 (S.D.N.Y. 2002) ("[C]ourts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context.").

### 3. Causation

Plaintiff does not dispute Defendants' contention that any physical beatings he suffered did not occur directly at their hands. Plaintiff's theory, as the Court understands it, is that Defendants' denial of an ENT consult resulted in Plaintiff remaining deaf rather than receiving cochlear implants. Remaining deaf while incarcerated resulted in Plaintiff being more vulnerable than he otherwise would have been (had he received cochlear implants). Due to that vulnerability, Plaintiff was an easy target for beatings at the hands of fellow inmates and prison staff and/or Plaintiff was beaten for failure to properly respond in a socially appropriate manner to fellow inmates and prison staff. This case thus presents a contrast from cases where there is simply no plausible causal connection between the physical injury and constitutional deprivation. *See Gousse v. Whitfield*, No. 99 CIV. 10665, 1999 WL 1029715, at *1 (S.D.N.Y. Nov. 10, 1999) (finding plaintiff did not meet § 1997e(e)'s requirements where he "nowhere hint[ed] that [defendant's] conduct caused him any physical injury.").

As with the issue of the alleged beatings discussed above, the Court is unable to resolve this dispute regarding causation in the context of a motion *in limine*. It is better addressed at trial in light of the evidence presented therein. *See Chan*, 184 F. Supp. 2d at 340. Accordingly, Defendants' motion to limit Plaintiff's damages on this ground is DENIED WITHOUT PREJUDICE.

## II. Plaintiff's Prior Criminal Trial Testimony

Next, Defendants assert that they are entitled to rely on Plaintiff's prior criminal trial testimony if the Court does not limit Plaintiff's ability to recover compensatory damages. ECF

No. 167-1 at 6-8.  Because the Court has not limited Plaintiff's ability to recover such damages under the analysis above, the Court considers this issue.

In their motion, Defendants discuss two types of prior testimony they seek to use at trial. First, they seek to utilize testimony from Plaintiff's prior criminal trial, given on March 4, 2009, in which he states that he contemplated suicide while he was on the run after having committed a crime.  ECF No. 167-1 at 6.  The specific testimony Defendants seek to introduce is as follows:

Q.      Did you tell the police that you thought about killing yourself?

A.      Yes, sir.

ECF No. 167-3 at 2.

Defendants' position is that because Plaintiff contemplated suicide in 2009, but subsequently was designated as an inmate not in need of mental health care services while at Wende Correctional Facility, Defendants should be permitted to present this evidence for the jury to consider since Plaintiff is seeking damages for mental suffering and may allege suicidal ideations as a part of that suffering.  *Id.*  Defendants argue that this testimony qualifies as a "prior statement of an opponent" and is thus admissible under Federal Rule of Evidence ("FRE") 801(d)(2).

In response, Plaintiff argues that the testimony is irrelevant under FRE 401 and, even if relevant, should not be permitted because "it would clearly be more prejudicial than probative."  ECF No. 173 at 4-6.  The Court agrees with Plaintiff.  Any mental anguish that Plaintiff suffered at the time of the underlying criminal offense, which he testified to in 2009, has no tendency to prove or disprove mental suffering he experienced as a result from being deaf in prison years later.

Thus, this evidence is irrelevant and is precluded under FRE 401[3] and 402.[4]  *See Contreras v.*

*Artus*, 778 F.3d 97, 108 (2d Cir. 2015) ("Evidence is relevant if it has any tendency in reason to

prove the existence of any material fact, i.e., it makes determination of the action more probable

or less probable than it would be without the evidence.").  Defendants' motion is DENIED WITH

PREJUDICE.

Second, Defendants seek to admit testimony given by Plaintiff at his criminal trial that he

feared being beaten by gang members and that he paid a gang member for protection.  ECF No.

167-1 at 7.  Specifically, the testimony is as follows:

> Q.     You wanted protective custody why?
>
> A.     Because when Bloods when the Bloods hear they was trying to accuse me of what they was accusing me of, they was going to be doing what they doing to me right now.
>
> Q.     You feared revenge, correct?
>
> A.     Not calling it revenge, sir.
>
> Q.     You feared that you would be harmed, correct?
>
> A.     I feel the Bloods were trying to get beat me up.

ECF No. 167-3 at 3.

In response, Plaintiff argues that this testimony is inadmissible under FRE 401 and 402.

The Court agrees.  Based on the present record before the Court, the testimony has no tendency to

prove or disprove a material fact and thus is inadmissible under FRE 401 and 402.  In addition, the

Court finds such testimony is barred by FRE 403 because it risks confusing the jury and any

---

[3] FRE 401 provides that evidence is relevant if it "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Ev. 401.

[4] FRE 402 states in pertinent part that "[i]rrelevant evidence is not admissible."  Fed. R. Ev. 402.

probative value is substantially outweighed by the danger of unfair prejudice.[5]  "Evidence of a witness's affiliation with a gang is highly prejudicial, especially when the gang evidence is not relevant to a central issue in a case." *Ramos v. Trifone*, No. 3:11CV00679, 2015 WL 6509114, at *7 (D. Conn. Oct. 28, 2015) (precluding evidence regarding plaintiff's gang affiliation in prisoner civil rights case).  Here, the testimony does not specifically establish that Plaintiff was *a member* of a gang, but jurors could easily draw a conclusion that Plaintiff was involved in a rival gang to the Bloods since he feared violence at their hands.  Such an inference would be highly prejudicial and, as stated above, the testimony has no obvious probative value based on the present factual record.  Fear of beatings in 2009 at the hands of gang members is factually distinct from beatings that allegedly did occur years later that resulted from Plaintiff's inability to hear and were carried out by prison staff and fellow inmates.

However, we do not know if this testimony will ultimately *become* relevant based on the evidence presented at trial, and result in a different calculus as far as the probative value versus unfair prejudice.  For example, if, hypothetically, Plaintiff were to take the stand and testify that the only fellow inmates who beat him were members of the Bloods, this testimony could become relevant because it could tend to establish that he was beaten for some reason other than his deafness and resulting vulnerability—*i.e.*, a pre-existing dispute with members of a gang. Accordingly, Defendants' motion to admit this testimony is DENIED WITHOUT PREJUDICE.

---

[5] FRE 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Ev. 403.

### III.    Expert Witness Preclusion

#### A.  Relevant Federal Rules of Civil Procedure and Evidence

Under Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(A), a party must disclose "the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence [("FRE")] 702, 703, or 705." *Puglisi v. Town of Hempstead Sanitary Dist. No. 2*, No. 11–CV–0445, 2013 WL 4046263, at *3 (E.D.N.Y. Aug. 8, 2013) (brackets in original).  Read together, FREs 702, 703, and 705 "set forth the method by which, and on what topics a witness designated as an expert may render opinion testimony." *Id.* at 3 n.3.  "Rule 702 generally codifies the standard for establishing the reliability of expert testimony as set forth by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)."[6] *Id.*

FRCP 26(a) "sets forth two types of expert disclosures." *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 209 (S.D.N.Y. 2021).  As is relevant here, FRCP 26(a)(2)(B) mandates that the disclosure of any expert witness "retained or specially employed to provide expert testimony" must include a written report containing:

> (i) a *complete* statement of all opinions that the witness will express and *the basis and reasons for them*; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous

---

[6] In full, FRE 702 states as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

> 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Rodriguez*, 535 F. Supp. at 209 (emphasis in original) (quoting Fed. R. Civ. P. 26(a)(2)(B)).  FRCP 26(e) states that "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure . . . if the party learns that in some material respect the disclosure ... is incomplete or incorrect."  *Id.* (quoting Fed. R. Civ. P. 26(e)(1)(A)).

FRCP 37(c)(1) states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  *Rodriguez*, 535 F. Supp. 3d at 209 (quoting Fed. R. Civ. P. 37(c)(1)).  "The party that fails to comply with Rule 26(a) or (e) bears the burden of proving both that its non-compliance was substantially justified, and that it was harmless."  *Id.* at 209-10.

While the Second Circuit has instructed that preclusion of information and/or witnesses "are harsh remedies and should be imposed only in rare situations, . . . the Circuit also recognizes that preclusion may be necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger."  *Arnold v. Krause, Inc.*, 233 F.R.D. 126, 130 (W.D.N.Y. 2005) (citing *Update Art, Inc. v. Modiin Publishing Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (internal quotation marks omitted)).  Courts consider the following factors in making this preclusion determination: "(1) the party's explanation for the failure to comply with the disclosure order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Id.*

### B. Analysis

Here,  Defendants seek preclusion of two of Plaintiff's expert witnesses—Dr. Roger Miles Rose and Dr. Paul Adler.  ECF No. 167-1 at 8-21.  The Court considers first Defendants' arguments related to Dr. Rose before turning to Dr. Adler.

### i. Dr. Rose

Defendants argue that the Court should preclude Dr. Rose from testifying as an expert and should preclude admission of his report.  First, they raise the issue of disclosure of Dr. Rose as an expert witness, arguing that Plaintiff did not identify Dr. Rose in his FRCP 26 disclosure.  ECF No. 167-1 at 8.  Second, they take exception to the sufficiency of Dr. Rose's expert report, arguing that it does not satisfy the requirements of Rule 26(a)(2).  *Id.*  Finally, they raise a number of specific arguments as to why the report is deficient, taking aim at, *inter alia*, the level of detail provided and Dr. Rose's methodology.  *Id.* at 8-19.

Plaintiff does not dispute that his initial FRCP 26 disclosures, ECF No. 167-3 at 9-13, did not disclose Dr. Rose as an expert witness.  Rather, he notes that Defendants were first put on notice regarding Dr. Rose serving as an expert in this case on May 21, 2018 when Plaintiff provided Defendants with Dr. Rose's letter.[7]  ECF No. 167-3 at 6-7.  His position is that Defendants should have raised any objection much earlier and have "acquiesce[ed] for years, and cho[sen] not to depose Dr. Rose."  *Id.* at 6.  Regarding the substance of Dr. Rose's testimony and letter, Plaintiff argues that Defendants cannot object to the substance of Dr. Rose's letter and

---

[7] On May 4, 2018, United States Magistrate Judge Hugh B. Scott issued a Third Amended Scheduling/Case Management Order (the "CMO").  ECF No. 66.  The CMO directed that "On or before **May 21, 2018**, plaintiff(s) will identify any experts and provide written reports as required under Rule 26(a)(2)."  ECF No. 66 at 1 (bold in original). Thus, setting aside adequacy of disclosure, Plaintiff's submission of Dr. Rose's letter to Defendants on May 21, 2018 complied with Judge Scott's deadline.

opinions "because they are based on and consistent with [Plaintiff's] audiology records, with which Defendants have demonstrated strong familiarity." *Id.* at 8.

In reply, Defendants do not dispute that they were on notice of Dr. Rose serving as an expert as of May 21, 2018 and that they received the letter on that date. But they maintain that the letter is insufficient to qualify as an expert report under FRCP 26(a)(2) and that Dr. Rose's testimony should be precluded under FRE 702. ECF No. 174 at 6.

### 1. Whether the May 21, 2018 Letter Complies with FRCP 26(a)(2)'s Expert Disclosure Requirements

The Court must consider whether Dr. Rose's report sufficiently complies with the disclosure requirements of FRCP 26(a)(2) before addressing whether preclusion is appropriate under FRCP Rule 37. *See Tokio Marine & Nichido Fire Ins. Co. v. Calabrese*, No. CV 07–2514, 2011 WL 5976076, at *10 (E.D.N.Y. Nov. 28, 2011) (finding that the court need not address the question of sanctions under Rule 37 where it finds that an expert report sufficiently complies with the disclosure requirements of Rule 26(a)(2)). Dr. Rose's letter reads as follows:

> I am a Board Certified Otolaryngologist licensed to practice in the State of New York. I have reviewed the medical records, [ ] including the audiometric testing that has been done on Mr[.] Wright over the past several years.
>
> It is my opinion, with reasonable medical certainty that your client suffers from a severe Sensorineural Deafness, cause undetermined, and that there is no medical help that can be offered to him. His condition re his hearing loss is permanent and and [sic] his level of impairment has and will continue to cause him ongoing social and psychological suffering[.] Hearing aids have been tried with little to no benefit.
>
> His testing has shown, again with reasonable medical certainty, that he is a proper candidate for surgical implantation of a Cochlear Implant[.] Such a device can be expected to offer him significant hearing benefit and is very highly recommended at this time.
>
> 1. Exhibits to be used: Audiometrics of Mr Wright and of the "normal" population
>
> 2. My C.V.[ ] is attached

3. My only testimony I can recall was in October 2017 : SANKARAN V. WARD AND NY PRESBYTERIAN

4. My FEE for this report is $250 and my fees for court appearance are $500/hour ( door to door )

ECF No. 167-3 at 6-7.

The Court agrees with Defendants that this letter is woefully deficient under Rule 26(a)(2)(B).  The rule requires that the report contain "a complete statement of all opinions that the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B).  In the letter, Dr. Rose opines that Plaintiff "suffers from a severe Sensorineural Deafness, cause undetermined, and that there is no medical help that can be offered to him."  ECF No. 167-3 at 6.  While the letter does state in the first paragraph that Dr. Rose has "reviewed the medical records, [ ] including the audiometric testing that has been done on Mr[.] Wright over the past several years," it fails to specifically provide what, if anything, in those records supports his conclusion regarding Plaintiff's diagnosis and prognosis.  *Id.*  The same can be said for Dr. Rose's next opinion: that "[Plaintiff's] condition re his hearing loss is permanent and and [sic] his level of impairment has and will continue to cause him ongoing social and psychological suffering[.]"  *Id.* Nowhere does Dr. Rose explain the basis and reasons for that opinion (besides the blanket statement that he "reviewed the medical records, [ ] including the audiometric testing.")  *Id.*  Dr. Rose's next opinion in the letter suffers from the same deficiency: he baldly asserts "that [Plaintiff] is a proper candidate for surgical implantation of a Cochlear Implant[.]  Such a device can be expected to offer him significant hearing benefit and is very highly recommended at this time."  ECF No. 167-3 at 6.  Once again, he provides no support or reasoning as to how he has drawn this conclusion.  Thus, the letter clearly does not include "all opinions the witness will express *and the basis and reasons for them*," as required by FRCP 26(a)(2)(B).  *See Puglisi*, 2013 WL 4046263,

at *5 (finding that an expert witnesses 5-paragraph letter "plainly [did] not contain 'all opinions the witness will express and the basis and reasons for them' as required by Rule 26(a)(2)(B)").

The next FRCP 26(a)(2)(B) requirement is that the report include "the facts or data considered by the witness in forming [the witness's opinions]." Fed. R. Civ. P. 26(a)(2)(B). Here, Dr. Rose's letter opines, *inter alia*, that (1) Plaintiff's hearing loss is permanent; (2) that his level of impairment has and will continue to cause him ongoing social and psychological suffering; (3) testing has shown Plaintiff is a proper candidate for cochlear implants; and (4) that cochlear implants will afford Plaintiff a "significant benefit" and are "very highly recommended at this time." ECF No. 167-3 at 6. A purported blanket reliance on "the medical records" and "testing" is not sufficient and the letter "is devoid of any reasoning, facts or data which explain [Dr. Rose's] conclusion[s]."[8] *Rodriguez*, 535 F. Supp. 3d at 211.

Based on the analysis above, the Court agrees with Defendants that Dr. Rose's letter is insufficient and fails to comply fully with FRCP 26(a)(2)(B).[9] The next step is for the Court to consider the appropriate remedy. *See id.* at 213 ("In light of Plaintiff's failure to disclose Dr. Weinstein's opinion regarding causation in compliance with Federal Rule of Civil Procedure 26(a)(2(B), the Court must determine whether preclusion is warranted.").

### 2. Whether the May 21, 2018 Letter Should be Precluded Under Rule 37(c)(1)

Since Dr. Rose's opinions set out in the May 21, 2018 letter are inadequate under FRCP 26(a)(2)(B), "Plaintiff would generally not be allowed to use these opinions at trial 'unless the

---

[8] Defendants represent to the Court that they have produced 328 pages of medical records and 717 pages of mental health records to Plaintiff during discovery in this action. ECF No. 167-1 at 11.

[9] Defendants also take issue with Dr. Rose's statement that "[m]y only testimony *I can recall* was in October 2017 : SANKARAN V. WARD AND NY PRESBYTERIAN." ECF No. 167-3 at 6 (emphasis added). Defendants express concern that Dr. Rose has only listed matters that he recalls testifying in and has thus "skirted the issue" of providing a full list. ECF No. 167-1 at 13. The Court need not reach this argument to conclude that Dr. Rose's letter is inadequate under FRCP 26(a)(2)(B).

failure was substantially justified or is harmless.'" *Benn v. Metro-North Commuter Railroad Co.*, No. 3:18-cv-737 (CSH), 2019 WL 6467348, at *6 (D. Conn. Dec. 2, 2019) (citing Fed. R. Civ. P. 37(c)(1)).   Preclusion under FRCP 37(c) is determined at the discretion of the district court. *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).

Looking at the first factor, Plaintiff does not make any attempt to explain his failure to provide an expert report from Dr. Rose that complies with FRCP 26(a)(2)(B).  Plaintiff argues that the Defendants acquiesced to the letter in current form because they did not object at an earlier time.  They also argue that the substance is supported by Defendants' own statement of undisputed facts accompanying their First Motion in Limine, ECF No. 124, that Defendants have "summarized the key points of Dr. Rose's opinion," that Defendants have "[c]learly" relied on the same records as Dr. Rose, and that the records cited by Defendants "repeatedly reflect a similar conclusion" to that of Dr. Rose.  ECF No. 173 at 6-7.  These arguments go to the other factors, most notably prejudice, and will be discussed below.  At bottom, Plaintiff offers no explanation for the letter's failure to comply with FRCP 26(a)(2)(B).  Accordingly, this factor weighs in favor of preclusion of Dr. Rose's letter.  *Cf. Engler v. MTD Products, Inc.*, 304 F.R.D. 349, 358 (N.D.N.Y. 2015) ("[P]laintiffs do not explain their failure to provide in a timely manner Gailor's opinion that the brake pads suffered a defect in manufacturing.  Thus, the first factor weighs in favor of preclusion of consideration of this opinion.").

Turning to the second prong, the importance of the testimony, the Court finds that it is, at best, neutral.  Dr. Rose is Plaintiff's medical expert per Plaintiff's witness list.  ECF No. 143 at 2-3.  Plaintiff indicates that he "will testify to Plaintiff's medical condition and that he is a proper candidate for cochlear implants." *Id.*  Plaintiff argues that his "case will be greatly prejudiced" if the Court precludes Dr. Rose's letter.  ECF No. 173 at 6.  On the one hand, Plaintiff undermines

his own assertion that Dr. Rose's testimony is critical when he argues that Defendants would not be prejudiced by Dr. Rose's testimony and opinion that Plaintiff is a proper candidate for cochlear implants because "[t]he audiology records Defendants cite repeatedly reflect a similar conclusion." *Id.* at 7. The notion that Dr. Rose's testimony and opinions are self-evident based on the records does Plaintiff no good. Plaintiff further points out that the Department of Corrections and Community Supervision's independent vendor "did not contest that [Plaintiff] was a proper candidate for cochlear implants." *Id.* Moreover, Plaintiff notes that "[n]either [ENT consult] denial was based on a determination that [Plaintiff] was not a proper candidate the [cochlear implant] procedure." *Id.* at 8. None of these points do Plaintiff any favors in establishing the crucial nature of Dr. Rose's testimony.

On the other hand, Dr. Rose is Plaintiff's sole medical expert and he will testify as to Plaintiff's medical condition in a trial that centers around deliberate indifference to Plaintiff's medical needs. *See* ECF No. 143 at 2-3. Dr. Rose's letter indicates that he will offer opinions which could bear on both liability and damages. For example, Dr. Rose opines that Plaintiff's "level of impairment has and will continue to cause him ongoing social and psychological suffering." ECF No. 167-3 at 6. All told, the Court finds that these countervailing considerations render this factor to be neutral, weighing neither strongly in favor nor against preclusion. *See Advanced Analytics, Inc. v. Citigroup Global Markets, Inc.*, 301 F.R.D. 31, 41 (S.D.N.Y. 2014).

The third factor—the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony—weighs strongly against preclusion. "While Rule 37 does not establish any time limits within which a motion for sanctions must be filed, unreasonable delay may render such motions untimely." *Rodriguez*, 535 F. Supp. 3d at 217 (quoting *Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 886 (S.D.N.Y. 1999) (internal quotation marks

omitted)).   "Courts in this Circuit will not preclude expert testimony based on prejudice where such prejudice is the result of the moving party's strategic decision to delay raising objections to expert disclosures."   *Capricorn Mgmt. Systs., Inc. v. Government Employees Insurance Co.*, No. 15-cv-2926, 2019 WL 5694256, at *7 (E.D.N.Y. July 22, 2019).

Discovery in this case closed on July 25, 2018.   *See* ECF No. 66.   Defendants received Dr. Rose's letter on May 21, 2018.   Thus, they had over two months *while discovery was still open* to raise these objections regarding the disclosure.   The contents of Dr. Roses's letter have not changed since that time.   Defendants waited almost three years after the close of discovery to first raise this issue in their motion *in limine* filed January 14, 2021.   ECF No. 134.   After the Court denied that motion without prejudice, Defendants did not seek to depose Dr. Rose or make any application to the Court regarding additional discovery.   They renewed their motion on January 19, 2022.   On these facts, Defendants cannot claim prejudice based on Dr. Rose's letter.   Any prejudice is the result of their own inaction.   Importantly, Defendants, do not claim that they only discovered the deficiencies years after disclosure or that Plaintiff ambushed them with new or supplemental information.   Therefore, this case falls in line with those in this Circuit where the moving party's dilatory conduct forecloses any serious preclusion argument under FRCP 37.   *See   Nemec v. Shrader*, No. 09-cv-7466, 2015 WL 1650391, at *2-3 (S.D.N.Y. Apr. 13, 2015) (denying plaintiffs' FRCP Rule 37 motion where it was "filed nearly 17 months after the close of discovery.");   *Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 41 (E.D.N.Y. 2010) ("[T]he Court concludes that, even if Plaintiffs may be prejudiced by the inadequate report, any prejudice Plaintiffs might suffer is a result of their own decision to wait so long before objecting to the report.");   *Atkins v. Cnty. of Orange*, 372 F. Supp. 2d 377, 397 (S.D.N.Y. 2005) ("[W]hile defendants may be prejudiced by the deficient report, they had over a year to object to the report;

20

thus any prejudice is a result of their own tactical decision to wait until a few months before trial to seek preclusion.").

Finally, the Court considers the fourth factor which is the possibility of a continuance. This case has been pending since 2013. It has transferred districts from the Southern District of New York to the Western District of New York and been before three United States District Judges, including the undersigned. Discovery, which closed July 25, 2018, has been closed for approximately 3 years and 9 months. Trial has been set twice previously and adjourned each time—once to permit the parties to review additional records and once to permit the Court to hold an evidentiary hearing on administrative exhaustion. Trial is currently set to go forward on February 14, 2022 and is mere days away. Based on all these facts, the Court finds that a continuance is not possible and that this factor weighs in favor of preclusion. *See Rodriguez*, 535 F. Supp. 3d at 214 ("[R]escheduling this trial during a pandemic when limited courtrooms are available to conduct jury trials would cause undue hardship on the judicial system. Thus, the impending trial date, the fact discovery has been closed for over five months and the difficulty in rescheduling the trial, all weigh against the possibility of a continuance."); *Advanced Analytics*, 301 F.R.D. at 41 ("[A] continuance is not appropriate, given the age of this case and the fact that discovery has long been closed.") (collecting cases).

The Court's analysis of the appropriate factors has weighed one factor neutral, one factor counseling against preclusion, and two factors weighing in favor of preclusion. However, "the merit or lack of merit of a sanctions application is not the only or, for that matter, necessarily the controlling consideration." *Nemec*, 2015 WL 1650391, at *3 ("A district court has very broad discretion with respect to the matter of discovery sanctions."). The Court finds Defendants' unexplained delay in raising this issue far weightier than the other factors. This is because, "[w]ere

the Court to grant [Defendants'] motion, it in effect would encourage parties to stay silent as to some discovery disputes during pretrial proceedings, and thus to lie in wait until long after discovery is complete only to ambush their unsuspecting adversaries with charges of wrongdoing on the eve of trial." *Id.* Importantly, the situation at hand does not "result[ ] wholly from [Plaintiff's] own failures." *Advanced Analytics, Inc.*, 301 F.R.D. at 42. As such, Defendants' motion *in limine* to preclude Dr. Rose's letter and testimony pursuant to FRCP 26(a)(2)(B) and FRCP 37 is DENIED.

### 3. FRE 702

Defendants also seek to preclude Dr. Rose's letter under FRE 702. ECF No. 167-1 at 13-19. In general terms, they argue that Dr. Rose's letter and Curriculum Vitae cannot satisfy the requirements of FRE 702.

Though couched in terms of FRE 702, Defendants' arguments raise issues of FRCP 26 and the adequacy of disclosure—which the Court has ruled on above. Because of the inadequacy of the disclosure, the Court cannot make an appropriate ruling as to whether Dr. Rose is qualified to offer his opinions under FRE 702 or whether the methodologies and reasoning underpinning the conclusions in his letter satisfy FRE 702. Accordingly, the Court finds that the better course is to reserve judgment on those issues until trial, at which the parties may question Dr. Rose to determine whether he is qualified under FRE 702. *See Chan*, 184 F. Supp. 2d at 340; *see also Horn v. Medical Marijuana, Inc.*, 15-CV-701, 2021 WL 1700257, at *1 (W.D.N.Y. Apr. 29, 2021) ("The parties have no inherent right to an *in limine* ruling and such rulings are viewed as a preliminary opinion given to allow the parties to formulate their trial strategy and allow the Court to manage the trial in the most efficient way possible."). Defendants' arguments that Dr. Rose's

testimony and letter should be precluded under FRE 702 are therefore DENIED WITHOUT PREJUDICE.

Moreover, in order to facilitate a proper inquiry into Dr. Rose's opinions during trial, the Court orders that Plaintiff, on or before **February 13, 2022 at 5:00PM**, convey to the Defendants and the Court a sufficient expert report as required by FRCP 26(a)(2)(B) with regard to any opinion testimony that will be offered by Dr. Rose. *See Thomas v. Consolidated Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996) (denying defendant's motion to preclude expert testimony but ordering the plaintiff to convey to defendant "a full report as required by Fed. R. Civ. P. 26(a)(2)(B).").  This report may not go beyond the bounds of the opinions set forth in the May 21, 2018 letter and may not offer additional opinions.  The Court's order that Plaintiff produce this report is not a sanction pursuant to FRCP 37 but is for the benefit of the parties and the Court so that a proper determination under FRE 702 may be made if such motion is renewed.  Such an inquiry would be difficult to undertake without an expert report that complies with FRCP 26(a)(2)(B).

### ii.  Dr. Adler

Next, Defendants argue that Dr. Adler should be precluded from testifying because his report does not comply with the disclosure requirements of FRCP 26(a)(2)(B).  Dr. Adler's expert report is five pages long and is significantly more detailed than that of Dr. Rose.  *See* ECF No. 167-3 at 21-25.  Even assuming Dr. Adler's report were deficient, a question the Court would consider a much closer call than that of Dr. Rose, the Court would deny Defendants' motion under FRCP 37 for the same reasons stated above.  Dr. Adler's report is dated May 18, 2018 and Defendants do not claim that it was recently supplemented or that Plaintiff ambushed them with new information related to his opinions or testimony.  Thus, any prejudice results from Defendants' own inaction.  *See Atkins*, 372 F. Supp. 2d at 397 ("[W]hile defendants may be

prejudiced by the deficient report, they had over a year to object to the report; thus any prejudice is a result of their own tactical decision to wait until a few months before trial to seek preclusion.").

Accordingly, Defendants' motion to preclude Dr. Adler's expert report and testimony under FRCP 26 and FRCP 37 is DENIED WITH PREJUDICE.[10]

## IV.   Defendants Koenigsmann and Misa

Defendants' final motion *in limine* is that the case should be dismissed against Defendants Koenigsmann and Misa because "Plaintiff cannot satisfy the condition precedent to proceeding against Defendants Koenigsmann and Misa."   ECF No. 167-1 at 21.   Specifically, Defendants point to Judge Scott's decision, at summary judgment, in which he permitted the case to go forward against Koenigsmann and Misa "conditioned . . . on Plaintiff being able to show that Defendants denied Plaintiff's request for a [Cochlear Implant] consultation in the three years before Plaintiff moved to amend."   ECF No. 167-1 at 23.

Defendants concede "that motions *in limine* are typically addressed to evidentiary issues to be resolved prior to trial, or complex evidentiary issues expected to arrive at trial."   *Id.* at 24. They assert, however, that claims "have sometimes been addressed on the merits" in motions *in limine*.   *Id.*   They further assert that they "have no doubt they could bring a successful Fed. R. Civ. P. 50(a) motion at the close of Plaintiff's proof and that Plaintiff's claims against [these] Defendants would be dismissed."   *Id.*

Defendants will have that opportunity and, for the time being, Plaintiff will be permitted to bring this case forward against Defendants Koenigsmann and Misa.   *See  Chan*, 184 F. Supp. 2d at 340; *see also Horn*, 2021 WL 1700257, at *1.   Accordingly, Defendants' motion to dismiss

---

[10] To the extent Defendants' are raising a challenge to Dr. Adler's report and testimony under FRE 702, that challenge is DENIED WITHOUT PREJUDICE to renewal at trial.

Koenigsmann and Misa is DENIED WITHOUT PREJUDICE but it may be renewed during trial if brought pursuant to FRCP 50 or another appropriate vehicle.

## CONCLUSION

For the foregoing reasons, Defendants' motion is resolved as follows:

1. Defendants' request to limit Plaintiff's damages is GRANTED IN PART insofar as Plaintiff's allegations of solitary confinement and isolation are not sufficient to establish a "physical injury" under § 1997e(e), and Plaintiff's deafness, standing alone, is likewise not a sufficient "physical injury" under the statute; and DENIED IN PART WITHOUT PREJUDICE as to whether Plaintiff's beatings satisfy § 1997e(e)'s "physical injury" requirement.

2. Defendants' request to permit Defendants to rely on Plaintiff's prior criminal trial testimony is DENIED WITH PREJUDICE as to the testimony regarding suicidal ideation and DENIED WITHOUT PREJUDICE as to testimony regarding the fear of beatings.

3. Defendants' request to preclude the report and testimony of Dr. Rose brought pursuant to FRCP 26(a)(2)(B) and FRCP 37 is DENIED WITH PREJUDICE; and Defendants' request to preclude the report and testimony of Dr. Rose is DENIED WITHOUT PREJUDICE as to FRE 702. Further, as explained more fully above, the Court ORDERS that Plaintiff, on or before **February 13, 2022 at 5:00PM,** convey to Defendants and the Court an expert report that meets the requirements of FRCP 26(a)(2)(B) with regard to any opinion testimony that will be offered by Dr. Rose.

4. Defendants' request to preclude the testimony of Dr. Adler is DENIED WITH PREJUDICE as to FRCP 26(a)(2)(B) and FRCP 37, and is DENIED WITHOUT PREJUDICE as to FRE 702.

     5. Defendants' motion to dismiss Defendants Koenigsmann and Misa is DENIED WITHOUT PREJUDICE but may be renewed during trial if brought pursuant to FRCP 50 or another appropriate vehicle.

     IT IS SO ORDERED.

Dated: February 11, 2022
       Rochester, New York

                                        _____
                                  HON. FRANK P. GERACI, JR.
                                  District Judge
                                  United States District Court